Jane M. Bower, as Administratrix, etc., Appellant *v* The State of New York, Respondent.

Under the provisions of the act authorizing appeals to this court "upon questions of law only," from a final award or order of the Board of Claims and declaring that the practice upon the hearing of such appeals shall conform as near as may be to that prevailing upon appeals from a court of record (§ 10, chap. 205, Laws of 1883, as amended by chap. 507, Laws of 1887; and § 11 as amended by chap. 60, Laws of 1884) when there is a conflict of evidence or any evidence to support the determination of the board, the questions of fact are not reviewable.

Upon a claim presented under the act of 1885 (Chap. 345, Laws of 1885), which authorizes the Board of Claims "to hear, audit and determine the claims for damages for persons owning real property adjacent to or bordering upon Seneca lake or its inlets  *  *  *  by reason of the overflow of water caused by the state dam at Waterloo, and the flush boards kept thereon," *held,* that said board might treat the natural water level of the lake as the standard from which to determine the question of liability of the state, without reference to the fact whether the water would have been lower if the dam were maintained as it was prior to the time the state acquired title, unless the change made by the state had the effect to raise the water of the lake above its natural level; also that if the improvements by the state in giving greater capacity in depth and width to the outlet would, without the dam, have lowered the lake, this was not available to the claimant to charge the state with the effect of the maintenance of the dam, unless it appeared that it raised the lake above its natural level or the level it would have had without the improvements.

The board, therefore, having found that, during the period embraced in the claim, the evidence failed to establish that the dam or flush boards, as maintained by the state, had raised the waters of the lake above its natural level, and that the damages complained of were the result of natural causes to which the dam and flush boards had not perceptibly contributed, and so that no claim had been established, which conclusions there was some evidence to sustain, *held,* that the decision was not reviewable here.

(Argued June 9, 1892; decided October 1. 1892.)

Appeal from decision of the Board of Claims, made April 10, 1889, awarding to the claimant nothing.

The claim was filed by Oliver P. Bower, the claimant's intestate, in June, 1886, for damages sustained by him by the flooding of his lands situate in the county of Schuyler, alleged

to have been occasioned by the state dam in the Seneca river
(the outlet of Seneca lake) at Waterloo, in raising the water of
Seneca lake. A dam has been maintained in the river by the
state at that place for the purposes of the Cayuga and Seneca
canal since it was opened to navigation as such in 1828. Prior
to that time, the Seneca Navigation Company, incorporated in
1813, had constructed a dam there. Its rights were purchased
by the state pursuant to Laws of 1825, chapter 271. The
dam was reconstructed in 1841, and the present dam was built
in 1884. The damages claimed were for the six years ending
in 1886.

The original claimant died during the pendency of the pro-
ceedings, and his personal representative was substituted as the
claimant. The Board of Claims found that the evidence failed
to establish that the damages to the land had been aggravated
by the height at which the flush boards upon the dam had been
maintained by the state during those six years, or that the dam
or flush boards, as maintained for that period, had raised the
water of the lake above its natural level; also that the land
had been rendered unfit for cultivation by reason of natural
causes to which the state had not perceptibly contributed by
the maintenance of the dam and flush boards during that time,
and determined that no claim, legal or equitable, against the
state was established.

*M. M. Cass, Jr.*, for appellant.

*S. W. Rosendale, Attorney-General*, for respondent.

*Per Curiam.* The case comes here for review by virtue of
the statute, which provides that the party "feeling aggrieved
by the final award or final order of the board may appeal to
the Court of Appeals upon questions of law only, arising upon
the hearing of the claim, or upon the excess or insufficiency of
such award or order. The Court of Appeals shall hear such
appeal and affirm, reverse or modify such award or order, or
dismiss such appeal, or award a new hearing before the Board

of Claims, as justice may require." (L. 1883, ch. 205, § 10, as amended by L. 1887, ch. 507, § 1.) And that "the practice upon the hearing of appeals in the Court of Appeals from the final order or award of the board shall conform, as near as may be, to the practice prevailing upon appeals from the courts of record of the state." (L. 1883, ch. 205, § 11, as amended by L. 1884, ch. 60, § 7.)

The restriction by the statute of the review to questions of law is in accordance with the practice of this court on appeals from judgments in civil actions, and consequently when there is a conflict of evidence or any evidence to support the determination of the board the question of fact thus presented is not the subject of review.

It is urged by the learned counsel for the claimant that the evidence required the board to find a state of facts which entitled him to an award of damages; and, therefore, the exceptions to its findings and to its refusal to find as requested were well taken. The fact is established that by the flooding of Bower's land situated near the head of Seneca lake in the village of Watkins, it was to quite an extent unfitted for profitable cultivation during the period in question. And to enable persons owning lands there to seek relief for such injuries as were occasioned by the state dam at Waterloo, it was provided by Ch. 345, L. 1885, that the Board of Claims was authorized "to hear, audit and determine the claims for damages of persons owning real property adjacent to or bordering upon Seneca lake, or its inlets in said state, by reason of the overflow of water caused by the state dam at Waterloo and the flush boards kept thereon within six years immediately preceding the filing of such claims with said Board of Claims."

It is apparent that the purpose of this statute was to permit the persons coming within its provisions to obtain from the state relief for the damages so far as they were attributable to the maintenance of the dam and flush boards. And the question presented for determination by the Board of Claims was whether or not the claimant had suffered any and what damages from that cause, and that was dependent upon the fact

whether the dam had the effect to raise the water in the lake essentially above its natural level. The finding of the board that it did not is challenged by the claimant. A dam had been in the Seneca outlet at or about the same place for upwards of seventy years at the time the claim was filed, and had been maintained by the state about sixty years. It does not appear by the evidence what was the condition of the land at and near the head of the lake at the time the dam was first constructed by the Seneca Navigation Company. But it does appear that quite a large tract, including that of the claimant, has been known as marsh lands, through which passes the inlet of the lake. Since the state succeeded to the rights of the navigation company, its purpose, as indicated by the course of legislation in providing for the maintenance of the dam and the use of the outlet for the canal, has been not to raise the water in the lake above its natural level. The authority given to the canal commissioners was to so construct the works as to reduce the water in the canal two feet below its natural level by deepening it at Waterloo and in the outlet of the lake. (L. 1828, ch. 290); and to reduce the waters of the lake to the level of the water in the outlet at a point half a mile below the foot of the lake. (L. 1829, ch. 360.)

Later the commissioners were authorized to lower the lake level of the canal one foot and secure four feet depth of water in it by removing obstructions at the head of the outlet and enlarging the channel so as to extend the lake level to Waterloo. (L. 1844, ch. 313.) It appears by the public canal records that pursuant to this act of 1844 improvements were made, which, it is claimed, had the effect to reduce the low-water stage of the lake about one foot. This seems to be matter of deduction not otherwise very clearly appearing by the record here. In 1854, provision was made for the enlargement of this and the Erie and Oswego canals (Ch. 16). Before this enlargement was completed, the canal commissioners were authorized in doing it to excavate the Seneca river and the canal from near Waterloo into the lake to the depth of nine feet and of the width not exceeding that required by law for

the enlargement of the canal.    (L. 1857, ch. 479.)    And by that act, it was further provided that nothing in it should "be so construed as to authorize or permit" the dam to be raised above its then height.    The enlargement seems to have been completed in 1861.

The canal commissioners were afterwards authorized to raise and maintain the dam not exceeding its original height, but so as not to raise the waters of the lake above their natural height; and it was provided that no claim should be entertained for any damages to land or property by reason of restoring the dam to its original height.    (L. 1867, ch. 752.)

The channel was deepened nine feet a portion and seven feet the rest of the way from the lake to Waterloo, and it was widened.    But nothing was done by way of raising the dam, pursuant to the act of 1867, until the fall of 1884, when it was rebuilt.    In the meantime in an act making appropriation for its reconstruction it was provided that the dam should be sufficient to restore and maintain the waters of the lake, but not above their original height.    (L. 1872, ch. 343.)

Thus appears the legislative purpose to not raise the natural level of the lake.    And how well that policy was observed in practical effect as the dam was maintained was a question before the Board of Claims.    It is represented by the public records relating to the canal that the dam of 1828 was two feet lower than that of the Seneca Navigation Company, and no evidence appears to the contrary in the record here.    And it may be inferred that, subject to the limitation in respect to the natural level of the lake, the provisions for raising it was in reference to the height of the original dam which the state found there when it took the rights of the navigation company. The dam which was constructed in 1841 was made four feet and eight inches in height, notwithstanding the plan and direction of the engineer that it be made four feet high.    This it seems was thereafter the only dam there until the new one was constructed in 1884.    The comparative height of those two dams was the subject of conflict in the evidence.    While that on the part of the claimant was that the new dam was a

foot higher than the old one, there is evidence that it was only one-half an inch higher, and that there was only one-fourth of an inch difference in the height of the flush boards upon them. These flush boards were fourteen inches wide on the new dam, and there is evidence to the effect that the flush boards were almost continuously upon the old dam about the same width from a time back as early as 1840. This dam is five miles from the lake, from which to it there appears by evidence to be a fall in the outlet of one foot and ten inches. There is much evidence relating to the effect of the dam upon the waters of the lake, and while that on the part of the claimant tends to prove it has caused the water of the lake to rise higher than it otherwise would or than it would if the outlet had been in its natural condition, and by that means flooded his premises, rendering them unfit for cultivation each of the six years preceding the time of filing of his claim, there is other evidence tending to prove the contrary, and is to the effect that the level is lower than it would be if the natural channel were restored with no dam in it, and that since the construction of the canal the lake level has subsided about one foot. This is attributed to the enlarging and deepening the channel by which the hydraulic capacity of it has been greatly increased.

The weight of the evidence of the respective parties arising out of this conflict is not the subject for consideration here, but for the purposes of this review the determination of the Board of Claims must be deemed conclusive. In view of the evidence it may be assumed that the board treated the natural water level of the lake as the standard from which to determine the question of liability of the state without reference to the fact whether the water would have been lower if the dam were not maintained as it was, unless it had the effect to raise the water of the lake above its natural level. This, we think, was the correct basis upon which to proceed, and was that within the contemplation of the act of 1885. If the improvements made by the state in giving greater capacity in depth and width to the outlet would, without the dam, have lowered the waters of the lake, this is not available to the claimant to

charge the state with the effect of the maintenance of the dam, unless it appeared to raise the water of the lake above its natural level or that which it would have had without the improvements.

The finding of the board that so far as the claimant's premises were during the period in question rendered unfit for cultivation they were so affected by reason of natural causes to which the state did not perceptibly contribute, was founded upon evidence tending to prove that the water in the lake was subject to become increased in height and especially so in the spring of the year, to greater or less extent. The lake is forty miles in length and about two miles in width. It drains a large area of uplands sloping towards it. And as far back as attention is called by the evidence it appears that these marsh lands were commonly overflowed with water in the spring of the year, although some years more than others.

It appears that in 1872 and 1880 the land in question was in condition for cultivation, while in the years since, it has generally been otherwise, yet so far as appears the canal was in use those two as it was in the other years. The last mentioned finding of the board was consistent with the other one before referred to, and the necessary consequence of it.

There is some evidence to support the conclusion of the Board of Claims, and therefore, its decision and award should be affirmed.

All concur.

Award affirmed.